IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

AUDREA NICOLE DEAVER,

          Plaintiff,

v.                                                                    CIVIL ACTION NO.   5:13-cv-05776

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

      This is an action seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act (SSA), 42 U.S.C. §§ 401-433,1381-1383f.  By *Standing Order* entered March 21, 2013 (Document 4), this action was referred to United States Magistrate Judge R. Clarke VanDervort for proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

      Plaintiff-Claimant, Audrea Deaver, filed applications for DIB and SSI on September 14, 2010 (protective filing date), alleging disability as of August 1, 2010, due to a nervous breakdown, blood clots in the legs, ADHD, and bipolar disorder.  The Plaintiff's claim was denied initially, and again upon reconsideration.  On November 3, 2011, the Plaintiff had a hearing before the Honorable Susan L. Torres, United States Administrative Law Judge (ALJ).  By decision dated November 14, 2011, the ALJ found that the Claimant was not disabled and not entitled to any benefits.  The Appeals Council subsequently denied the Plaintiff's request for review, and the

decision of the ALJ became final. The Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

On August 15, 2014, Magistrate Judge VanDervort submitted his Proposed Findings and Recommendation ("PF&R"), wherein it is recommended that the Court (1) deny the Plaintiff's motion, (2) grant the Defendant's motion, (3) affirm the final decision of the Commissioner, and (4) dismiss this matter from the Court's docket. (Document 12 at 26.) The Court has reviewed the PF&R, the parties' motions, the *Plaintiff's Objections to Proposed Findings and Recommendations* (Document 13), and the *Defendant's Response to Plaintiff's Objections to the Report & Recommendation* (Document 14).

## I. APPLICABLE LAW

Disability under the SSA is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). The Social Security Administration utilizes a five-step inquiry to determine eligibility for social security disability benefits. The steps are followed in order, and if a claimant is determined to not be disabled at one step, the evaluation does not proceed to the next step. *See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005)). The Magistrate Judge's PF&R correctly lays out the five-step inquiry as follows:

> The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id*. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative

2

>  Regulations No. 4. *Id*. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2010). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

(Document 12 at 2-3.)

## II. STANDARD OF REVIEW

The Federal Magistrates Act requires a district court to conduct a *de novo* review upon the record of any portion of the proposed findings and recommendations to which written objections have been made. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Conversely, a district court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that districts courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006). A district court's authority to choose among these options is independent of the statutory duty to afford review to those portions to which objections are addressed. *See Camby*, 718 F.2d at 199-200 ("If no

3

objections were made, for example, it could hardly be argued that the judge must accept the [magistrate judge's] report if it contained an error of law apparent on its face."). As such, it is wholly within the district court's discretion to accept, reject, or modify a magistrate judge's proposal irrespective of any objections by the parties. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Running parallel with district courts' discretion under the Federal Magistrates Act is the responsibility to ensure the just disposition of matters referred to magistrate judges. *See Mathews v. Weber*, 423 U.S. 261, 271 (1976); *see also Raddatz*, 447 U.S. at 683.

Section 405(g) of the SSA provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .." 42 U.S.C. § 405(g) (2012). This language limits the Court's role in reviewing the ALJ's decision to determining whether his findings are supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

"Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)). Substantial evidence has also been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hays*, 907 F.2d at 1456 (citing *Richardson*, 402 U.S. at 401). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157,

4

1157-58 (4th Cir. 1971). When the Commissioner's decision clearly disregards the overwhelming weight of the evidence, the Court may modify or reverse the decision. *Id.*

### III. DISCUSSION

Magistrate Judge VanDervort's PF&R sets forth in detail the procedural and factual history surrounding this matter. The Court now incorporates by reference those facts and procedural history, but in order to provide context for the ruling herein, the Court provides the following summary.

*A. ALJ Findings of Fact and Conclusions of Law*

The ALJ found that the Plaintiff had not engaged in substantial gainful activity since August 1, 2010. (Document 9-2 at 18, Finding No. 2.) The ALJ also found that the Plaintiff suffered from "deep venous thrombosis, Protein C deficiency, bipolar disorder, generalized anxiety disorder, history of opioid dependence, and schizoaffective disorder." (*Id.*, Finding No. 3.) The ALJ further noted that "the severe impairments have more than a minimal effect on the ability to do basic physical and mental work activities." (*Id.*) However, with respect to the third inquiry, the ALJ found the Plaintiff did "not have an impairment or combination of impairments that meets or medically equates the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 21, Finding No. 4.) The ALJ found that the Plaintiff's physical impairments, DVT and Protein C deficiency did not meet listing 4.12, Peripheral Arterial Disease," and further found that the "severity of the claimant's mental impairments, considered

singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, 12.06, and 12.09." (*Id.* at 21-22) (emphasis omitted.)[1] The ALJ concluded that

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can never climb ladders, ropes or scaffolds. She must avoid even moderate exposure to hazards such as heights and moving machinery. She requires a sit/stand option to change position every 30 minutes. She is limited to routine, repetitive tasks involving occasional interaction with the public.

(Document 9-2 at 23, Finding No. 5.)

The ALJ reviewed, synthesized and expounded on the criteria and evidence that she considered in reaching this conclusion. (Id. at 22-24.) She found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Id. at 24.) She found that: (1) the claimant has made inconsistent statements regarding her use of alcohol and drugs, (2) the medical records do not support disability, and (3) the mental health treatment records do not support disability. (Id. at 24-25.) In summation, the ALJ determined that "[t]he claimant's residual functional capacity as determined in this decision is fully supported when considering the claimant's testimony and written statements in connection with the clinical facts, medical findings, and opinions of treating, examining, and non-examining sources." (*Id.* at 26.)

---

1    The Court notes that the ALJ considered whether any "paragraph B" criteria were satisfied, and concluded they were not. ("Because the claimant's mental impairments do not cause at least two "marked" limitations or one marked limitation and repeated episodes of decompensation, each of extended duration, the paragraph B criteria are not satisfied.") (*Id.* at 21.)

Under the fourth inquiry, the ALJ found that Plaintiff had no past relevant work. (Document 9-2 at 27, Finding No. 6.) Under the last inquiry, based on the vocational expert testimony, the ALJ concluded that Plaintiff could perform jobs such as surveillance system monitor, hand packer/sealer, and price marker. (*Id.* at 28, Finding No. 10.) Thus, the ALJ denied benefits. (*Id.*, Finding No. 11.)

### *B. Plaintiff's Background and Medical Records*

Plaintiff was twenty-nine (29) years old at the time of the administrative hearing. She has a tenth grade education, and was able to communicate in English.

### *i. Physical Impairments*

In February of 1997, the Plaintiff was diagnosed with deep vein thrombosis (DVT), and Protein C deficiency. Following these diagnoses, she was treated by multiple physicians from 2000 through 2012, who prescribed her Coumadin and Lovenox for the DVT. (Document 12 at 7.) She underwent a bilateral lower extremity venogram and TPA treatment in March of 2010. (*Id.*) She continued to complain of swelling and tenderness in her legs, and on June 15, 2010, she underwent a venogram and left iliac vein angioplasty, which resulted in improvement in edema of the left leg. (*Id.* at 8.) She reported feeling much better following this procedure, but problems again arose, and a venous Doppler revealed DVT of the left femoral vein. (*Id.*) Dr. Mustafa Rahim completed a consultation and exam on December 17, 2010, and the Plaintiff denied any pain, swelling, or issues since May 2010. (*Id.*) The doctor noted that she "walked without any assistive device and had no peripheral edema, swelling or redness." (*Id.*) He also noted that she would have to take anticoagulation medication for the rest of her life. (*Id.* at 9.)

7

On January 14, 2011, Dr. Nisha Singh, M.D. completed a form Physical RFC Assessment, where she "opined that Claimant was capable of performing light exertional work with a sit-stand option to relieve pain and discomfort as accommodated by normal breaks, or every two hours for 15 minutes," and noted that she did not have any postural limitations. (Document 12 at 9.) The doctor did note, however, that the Plaintiff should have no difficulty lifting, climbing steps, or standing, but that "walking far would be problematic due to her leg swelling." (*Id.*) Another doctor, Caroline Williams, M.D., affirmed Dr. Singh's RFC assessment on February 18, 2011, noting that the Plaintiff "did not allege any changes in her conditions nor any new illnesses, injuries, or limitations and that there was no new medical evidence in the file. (*Id.*) As of August 3, 2011, the Plaintiff was feeling well and had no edema in either leg, but was till prescribed Coumadin. (*Id.* at 9-10.)

  *ii. Mental Impairments*

The Plaintiff was seen at CAMC on August 4, 2010, for complaints of confusion, headache, and blurred vision.[2] (*Id.* at 10.) She reported quitting her job two weeks prior because of stress. (*Id.*) Two days later, she was seen at B-ARH for stress resulting from her blood clots, depression, anger, irritability, racing thoughts, mood swings, and lack of sleep. (*Id.*) The Defendant was diagnosed by Dr. Hassan Jafary, M.D., with bipolar disorder, rule out schizoaffective disorder, anxiety, not otherwise specified, and opiate dependence. (*Id.*) She was admitted to the psychiatric unit and improved after medication. (*Id.*)

She was then seen by Karen Cummings-Lilly, a licensed social worker, on September 3, 2010, following her release from the psychiatric unit. (*Id.* at 11.) She had multiple visits with

---

2  The Court notes that the Plaintiff attempted suicide in 2005. She was apparently "distraught over a relationship ending and consumed multiple pills that belonged to a friend." (Document 10 at 9.)

8

Ms. Cummings-Lily, and on November 30, 2010, she underwent a psychological evaluation with Kelly Robinson, M.A. (*Id.*) The Plaintiff reported feelings of nervousness, irritability, abdominal distress, muscle tension, fatigue, shakiness, fearful feelings, and excessive worry.[3] (*Id.* at 12.) Ms. Robinson opined that Plaintiff's "ability to maintain social functioning was mildly deficient and her concentration, persistence, and pace were within normal limits." (*Id.*) On December 27, 2010 Dr. Jim Capage, Ph.D, completed a form Psychiatric Review Technique, and concluded that the Plaintiff's mental issues were "non-severe impairments that resulted in mild limitations in activities of daily living and maintaining concentration, persistence, or pace; moderate difficulties in maintaining social functioning; and one or two episodes of decompensation each of extended duration." (*Id.* at 12-13.) He concluded that she was "capable of performing routine repetitive work-related activities in a low-demand setting that does not require fast-paced production or call for more than occasional and superficial social interaction." (*Id.* at 13) (internal quotations omitted.) This opinion was affirmed by Dr. James Binder, M.D., on February 18, 2011. (*Id.*)

Follow-up visits with Ms. Cummings-Lilly in April and May of 2011 revealed that the Plaintiff was rather flat and her speech was slowed, and she was often tearful. (Id.) Ms. Cummings-Lilly "discussed the possibility of Methadone interfering with Claimant's pleasure receptors." (*Id.* at 14.) Her Wellbutrin prescription dosage was subsequently increased by Dr. Jafary, and she responded well. (*Id.*) In August 2011, Ms. Cummings-Lilly noted on a visit that the Plaintiff was doing well and that Plaintiff "has done remarkably well given the severity of her illness a year ago." (*Id.* at 14) (internal quotations omitted.) On September 16, 2011, Dr. Jafary "opined that Claimant was psychiatrically stable," and continued her on her prescription of

---

3  Ms. Robinson also noted that the Plaintiff was receiving treatment at a methadone clinic five days per week.

Wellbutrin, Geodon, Haldol and Cogentin. (Document 11 at 9.) On October 24, 2011, however, Ms. Cummings-Lilly stated that the Plaintiff remained "fragile, depressed, and anxious," and noted that if not for her boyfriend, the Plaintiff "would need placement in a board and care facility," and finally, that the Plaintiff was "not capable of meeting her every day needs." (*Id.* at 15) (internal quotations omitted.)

### *C. Plaintiff and Defendant's Arguments for Judgment on the Pleadings*

Plaintiff argues that the ALJ decision is not supported by substantial evidence because the ALJ erred when finding that she has the residual functioning capacity to perform light work. (Document 10 at 15.) The Plaintiff complains that light work entails walking and/or standing, contrary to the sit-stand option noted by the ALJ, and further, her RFC is actually more limited than the ALJ credited. (*Id.* at 15-16.) She complains that she cannot walk or sit for longer than a limited period because of the swelling in her legs, and offers for support her testimony that she could only walk for five minutes and sit for only fifteen minutes. (*Id.*) Thus, she argues that her RFC limits her to less than light work. (*Id.*) She also complains that the ALJ did not afford enough weight to the opinion of Ms. Cummings-Lilly, based on SSR 06-03p. (*Id.* at 18-20.)

The Commissioner responds that the ALJ reasonably assessed Plaintiff's physical RFC by addressing the Plaintiff's credible statements and functional limitations as established by the doctor's treatments and opinions. (Document 11 at 2-4.) It argues that the ALJ arrived at the proper conclusion after reviewing the pertinent medical records in light of the vocational expert's testimony and the Plaintiff's restrictions and limitations. (Id. at 9-12.) As to the decision to afford little weight to the opinion of Ms. Cummings-Lilly, the Commissioner argues that the ALJ did not err in light of the evidence establishing that the Plaintiff's physical and mental conditions

did not prevent her from performing routine, repetitive tasks that involve only occasional interaction with the public. (*Id.* at 13-17.) The Commissioner also asserts that Ms. Cummings-Lilly is a social worker, and pursuant to the Regulations, is not an acceptable medical source. (Id. at 17.) It argues that the ALJ gave Ms. Cummings-Lilly's opinion the weight it deserved and properly considered it, even though said opinion was contradicted with her own treatment notes and those of Dr. Jafary, who assessed that the Plaintiff was psychiatrically stable. (*Id.* at 16-17.)

### D. *Magistrate Judge's PF&R*

The Magistrate Judge concluded that both medical and opinion evidence supported the ALJ's RFC assessment as to mental and physical limitations. (Document 12 at 18-20.) "[T]he undersigned finds that the Claimant's condition improved with medication and other treatment and that the ALJ's RFC is supported by substantial evidence." (*Id.* at 21.) The Magistrate Judge also concluded that "the ALJ complied with the mandates of SSR 83-12 and inquired of the [vocational expert] respecting the availability of unskilled jobs allowing for a sit-stand option every 30 minutes. The vocational expert testified as to how such a limitation impacted the unskilled, light occupational base," and the vocational expert then "identified light and sedentary jobs that existed in significant numbers in the national and regional economies. Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision." (*Id.* at 23.)

As to the mental RFC assessment, the Magistrate Judge found that the medical record evidence and opinion evidence supports the ALJ's decision. (*Id.* at 23-26.) "Given the inconsistencies between Ms. Cummings-Lilly's notes and opinions and between Dr. Jafary's notes and the other opinion evidence of record, Claimant's argument simply fails on the facts of the case.

11

The . . . ALJ's decision to accord less weight to Ms. Cummings-Lilly's opinion is supported by the substantial evidence of record." (*Id.* at 26.)

### E. *Plaintiff's Objection*

The Plaintiff tenders basically two objections. She first argues that the "Magistrate Judge's finding that the ALJ's mental RFC assessment is supported by substantial evidence is not supported by the record." (Document 13 at 2.) She complains that the ALJ did not "take into account all of Plaintiff's mental limitations, rendering his (sic) final decision without the support of substantial evidence." (*Id.*) The Defendant responds that the Plaintiff has not asserted a proper objection as she "raises new substantive arguments that she failed to raise before the Magistrate Judge and therefore has waived them." (Document 14 at 1) (citation omitted.) The Defendant argues that even if the Court considers the new argument, they still fail because they lack merit in light of the record. (*Id.* at 2-3.) The Court notes that the first objection is proper as the Plaintiff has complained of this alleged shortcoming throughout her pleadings, while her second objection is improper because she first raised her issue with the ALJ's hypothetical questions in her objections to the Magistrate Judge's adoption of the ALJ's findings.

The Plaintiff's improper objection goes to the "ALJ's omission of limitations from his controlling hypothetical question and his RFC to account for all of the severe impairments that he found . . .." (*Id.* at 3.) In support of this objection, she relies on *Ealy v. Comm'r of Social Security*, 594 F.3d 504 (6th Cir. 2010), in which the Sixth Circuit Court of Appeals held that an expert's finding that the claimant could perform certain work could not be relied upon when the hypothetical inadequately described the claimant's limitations. 594. F.3d at 517. "Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."

12

*Harris v. Astrue*, 2012 WL 4478143 *5 (D.S.C. 2012) (unreported) (aff'd by *Harris v. Commissioner of Social Sec. Admin.*, 538 Fed.Appx. 293 (4th Cir. 2013)) (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)). Because the Plaintiff did not raise her issue with any of the hypothetical questions in her brief in support of the pleadings before the Magistrate Judge, it is inappropriate to now raise them in her objections, and the Court will not address this issue.[4]

As to the properly raised objection, the Court finds no merit to the Plaintiff's contentions. A review of the hearing transcript and testimony, as well as the medical record and opinion evidence, reveals that the ALJ's findings and recommendation were indeed based on substantial evidence. "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)). Substantial evidence has also been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hays*, 907 F.2d at 1456 (citing *Richardson*, 402 U.S. at 401).

In reviewing the whole record, the Court finds that the ALJ's conclusion is supported by ample evidence and is rational. The ALJ found that the Plaintiff was limited to routine, repetitive tasks involving occasional interaction with the public after considering the entirety of the medical records, doctor's notes and opinions, and the testimony of the Plaintiff herself. Given that the ALJ specifically found that Plaintiff could not perform a full range of light work, testimony of a vocational expert was needed to establish that there were jobs significant in number in the

---

4    Even assuming *arguendo* that the Plaintiff's objection to the hypothetical questions was proper, it still fails in light of the evidence and record as a whole. Specifically, the ALJ's hypothetical questions correctly noted the limitations of the Plaintiff per her RFCs and the record of the case. (*See* Document 9-2 at 61-63.) Further, Plaintiff's counsel also declined to ask questions of the vocational expert at the November 2011 hearing regarding the hypothetical scenarios and his findings of what jobs would be appropriate. (*Id.* at 63.)

economy that Plaintiff could do. The vocational expert testified that given Plaintiff's limitation, there were jobs such as surveillance system monitor, hand packer/sealer, and price marker.

The ALJ further noted that

> [i]n January 2011, a state agency non-examining reviewing physician concluded the claimant could perform light work with sit/stand options every two hours, accommodated by normal breaks; could never climb ladders, ropes, or scaffolds; and avoiding even moderate exposure to hazards, such as heights and moving machinery; in February 2011, another state agency physician affirmed. The undersigned gives significant weight to the opinions of the state agency physicians, as consistent with other evidence of record.

(Document 9-2 at 26.) The ALJ carefully weighed the Plaintiff's testimony against the totality of the evidence, and decided to afford little weight to the Plaintiff's inconsistent and contradictory statements regarding the intensity, persistence, and limiting effects of her symptoms in light of and compared to the RFC assessment's findings. The United States Supreme Court has noted that "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474 (1951). The ALJ found that

> [t]hus, it appears that she has improved with [mental health treatment]. Furthermore, [the Plaintiff] testified that she has no problem concentrating when she watches TV shows and she can sit for 30 minutes to one hour when she watches a show. This is consistent with the residual functional capacity for routine, repetitive tasks and for the sit-stand option every 30 minutes.

(Document 9-2 at 27.) The same is true for the opinions and conclusion of Ms. Cummings-Lilly. The ALJ carefully compared her opinions and conclusions to both her earlier opinions and those of the treating doctors, and found that Ms. Cummings-Lilly's opinions were directly contradicted by her own notes as well as the opinion of Dr. Jafary that the Plaintiff was psychiatrically stable.

14

(See Document 9-2 at 25-26.) The ALJ embarked on a careful weighing of sometimes contradictory evidence to arrive at her findings.

In view of the record, the Court cannot say that a reasonable mind would not reach this conclusion in light of the totality of the evidence—mental and physical—combined with the testimony of the Plaintiff and her treating providers. The ALJ's conclusion and findings are supported by substantial evidence, and thus, the Plaintiff's objection is **OVERRULED**.

## *CONCLUSION*

Wherefore, after careful consideration, based on the foregoing findings, the Court does hereby **ORDER** that the Magistrate Judge's Proposed Findings and Recommendation (Document 12) be **ADOPTED**. The Court further **ORDERS** that the Plaintiff's motion for judgment on the pleadings (Document 10) be **DENIED**, the Administrative Law Judge's final decision be **AFFIRMED**, and that this matter be **DISMISSED** from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

        ENTER:    September 16, 2014

*[signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA